devise was necessarily contingent. But as the rules of law require the vesting of estates as soon as there is any one who can take, the remainder vested in Henry Clay Heermans upon his election to take the farm in 1846: Lantz v. Trusler, 37 Pa. 482. At this time there was certainly no condition that could be performed. The appraisement was not to be made until after the death of the widow which did not occur until 1868; and the payment of the appraised value was to be made still later. But neither appraisement nor payment to the other children of their shares was by the terms of the devise made a condition of the devisee's tenure; and when an estate has once vested, the law will not imply a doubtful condition to defeat it: Womrath v. McCormick, 51 Pa. 504; Lantz v. Trusler, *supra.* It is, however, more than doubtful whether the making of the appraisement and payment of the shares of the appraised value, were intended to be conditions of the devisee's tenure. In Hart v. Homiller, 20 Pa. 248, a similar devise was held not to be on condition that the devisee should pay the valuation, but that the valuation was simply a charge upon the land which could be enforced only in the orphans' court. It follows that whatever remedy these plaintiffs have is in the orphans' court. If they were not concluded by anything done they might long since have had the appraisement made under the Act of April 17, 1869, P. L. 72, and enforced payment in the manner indicated in Hart v. Homiller, 23 Pa. 39.

The judgment is reversed.

## Com. v. N. Y., L. E. & W. R. R. Co., Appellant.

*Tax on corporation bonds—Deduction of tax—Act, 1885.*

The Act of June 30, 1885, § 4, requiring the deduction of a state tax by corporate officers in paying interest on scrip, bond or certificate of indebtedness issued to residents of the commonwealth, with penalty for noncompliance, applies to a foreign corporation upon bonds owned by either individuals or corporations in Pennsylvania and acting as trustees for persons whose residence is unknown, although the bonds were originally issued and sold to non-residents.

*Tax on income or franchise—Double taxation—Act, 1889.*

A tax upon net earnings or income of trust companies, which have no capital stock, holding such bonds, under § 27 of the Act of June 1, 1889,

is a tax on the franchise and therefore not double taxation, although the net income or earnings were derived from the interest on bonds taxable under the Act of 1885.

*When to begin to compute tax on interest.*

Where interest was payable on these bonds June 1, 1889, the date of the passage of the Act, only one half year's tax will be charged for 1889 : Per SIMONTON, P. J.

*Constitutional law—Taxation—Extra-territorial—Uniform—Due process of law—Impairing obligation of contracts—Commerce.*

The Acts of June 30, 1885, and June 1, 1889, are not in conflict with art. IX, § 1, of the constitution of the state requiring uniformity of taxation; nor with the implied prohibition against extra-territorial taxation, contained in the Federal constitution; nor with art. V, and art. XIV, § 1, of the amendments to the constitution of the United States, providing due process of law and equal protection ; nor with art. I, § 10, of the U. S. constitution, as an impairment of the obligation of the charter contract with the foreign state ; or with the contract contained in the legislation of this state, which, in admitting the corporation to do business, did not impose any condition that the company should act as collector of state taxes ; or as impairing the obligation of contracts between the corporation and its creditors or the holder of the coupon; nor do said Acts violate the commerce clause of the constitution of the United States.

Argued May 31, 1892.    Appeal, No. 19, May T., 1892, by defendant, from judgment of C. P. Dauphin Co., Jan. T., 1892, No. 386, for plaintiff, on trial by court, without jury, of appeal from settlement of tax on corporate bonds, under Acts of June 30, 1885, and June 1, 1889.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Defendant's 15th specification of objection, on appeal from the tax settlement, was as follows :

" The New York, Lake Erie & Western R. R. Co. is not a corporation of the state of Pennsylvania, but is a corporation of, and located in, the state of New York, having its principal office and place of business in the city of New York, in said state, from which state alone it derives its corporate existence, and in which state, namely, in the city of New York, all of its bonded indebtedness was contracted and the bonds actually issued and sold, and are payable, principal and interest; and the said interest is there actually paid to persons there doing business.    The said company has no right, under its charter, to assume the duties of an assessor and collector of taxes for the state of Pennsylvania; neither is it competent or legal for

the state to impose such duties upon said company; and the Act of June 30, 1885, if it requires that this company, or the treasurer thereof, shall, in paying interest in the state of New York, retain any part of the interest stipulated to be paid to the holders of its bonds, impairs the obligation of the charter contract between the state of New York and the said company and the owners of its bonds, and is, therefore, void, because repugnant to paragraph 1 of § 10 of article I of the constitution of the United States, which provides that no state shall pass any law impairing the obligation of contracts."

The court found the facts as follows, in an opinion by SIMONTON, P. J.:

" 1. The New York, Lake Erie & Western R. R. Co., defendant, is a corporation chartered by the state of New York, owning and operating a main line of railroad extending from Jersey City, New Jersey, to Dunkirk, New York, about four hundred twenty-eight miles. To avoid certain engineering difficulties, its road was constructed a short distance through a portion of Susquehanna county, in Pennsylvania, under authority of certain legislation of this state requiring that, for the privilege or right of way through the said county as aforesaid, the company should pay to the state of Pennsylvania, annually, the sum of $10,000, and, also, annual taxes upon an amount of its capital stock equal to the cost of the construction of that portion of its road in this state. This annuity of $10,000, and also the annual taxes upon capital stock, have been regularly paid.

" 2. In pursuance of authority contained in its charter granted by the state of New York, the company has issued or assumed the payment of bonds to the amount of $77,772,173.10, secured by various mortgages upon its property. These mortgages are sixteen in number, bearing different rates of interest and differing in degrees of security for the payment of the principal. The bonds secured by them differ in actual value, some of them selling below par and others as high as forty per cent above par.

" 3. The bonds were all issued and sold to non-residents of Pennsylvania, and are now widely scattered, being owned by residents of various states of the Union, and largely held, also, in England, Scotland and other foreign countries. They are all coupon bonds and the coupons are seldom presented for

payment by the persons owning the bonds, but by messengers of banks and other collection agencies, frequently passing through three or four banks before reaching the office of the company for payment. Several thousand coupons are frequently presented for payment in a single day. The bank messengers and other collection agents presenting the coupons for payment seldom knowing the names or residence of the owners of the coupons themselves, it was impossible for the officers of the company, upon the payment of interest in 1889, to determine what bonds, if any, were owned by residents of Pennsylvania. They could only have done so by suspending payment of interest upon all the bonds until the ownership of each could have been ascertained, which ascertainment would have required an investigation necessarily consuming several weeks or months of time and entailing expenses and results, to avoid which the company deemed it wiser to pay the interest upon all its bonds in full, itself accepting whatever responsibility for taxes due the state of Pennsylvania might accrue from said payment in regard to such bonds as might afterwards be proved to have been owned by residents of Pennsylvania.

"4. In paying interest upon said bonds in 1889, the treasurer of the company did not deduct therefrom any Pennsylvania state tax, but paid the said interest in full.

"5. For the year 1889 the treasurer of the company reported to the auditor general of Pennsylvania that the entire amounts of the company's indebtedness held by residents of Pennsylvania and non-residents respectively were 'unknown.' Subsequently, on July 20, 1891, the treasurer and secretary of the company joined in a supplemental report to the auditor general setting forth the result of the most thorough investigation within their power to make as to the residence, in 1889, of the holders of the bonds, from which it appeared that $2,024,500 were, in 1889, owned in Pennsylvania.

"6. In 1889, as now appears, there were owned in Pennsylvania bonds issued by defendant as follows :

By individuals residing in Pennsylvania,     .     . $548,500
By individuals residing in Pennsylvania, trustees for
    persons whose residence is unknown,     .     . .     21,000
By corporations of Pennsylvania, in whose hands, by

reason of the payment of tax on capital stock and
for other reasons, said bonds are admitted to be
exempt,  .   .   .   .   .   .   .   .          382,000
By mutual saving fund societies which have no cap-
  ·ital stock and therefore are not subject to the pro-
  vision of the twenty-first section of the Act of June
  1, 1889, but which are subject to and pay the tax
  of 3 per cent upon their net earnings or income
  imposed by § 27 of said act, the said net earnings
  or income being derived from the interest upon
  the bonds in question and other bonds held by
  said societies,  .   .   .   .   .   .          1,050,000
By Pennsylvania corporations, in trust for persons
  of unknown residence,  .   .   .   .   .          23,000

"Interest was payable on some of these bonds June 1, 1889,
the date of the passage of the act under which the tax is
claimed, which provides that from and after its passage the
bonds shall be subject to the tax. Only one-half year's inter-
est was paid or payable on the balance of said bonds.

"The general office of the company defendant is at No. 21
Cortland street in the city of New York. The interest upon
its bonds is payable either there or in London, where it also
has an agency for the payment of interest. The treasurer and
other chief executive officers of the company are residents of
the state of New York.

"7. The legislation of the state of New York which consti-
tutes the charter of the company, in pursuance of which the
bonds and mortgages were issued, is silent upon the subject
of the taxation of its bonds and mortgages by the state of
Pennsylvania, or of the assessment and collection of a tax
thereon by the company or its officers; and the legislation of
the state of Pennsylvania authorizing the construction of a
portion of its road through a portion of said state, as afore-
said, is silent upon the subject of taxation of the bonds and
mortgages of the company, or of the assessment and collection
of a tax thereon by the company or its officers.

"8. The business of the defendant company, so far as the
state of Pennsylvania is concerned, consists chiefly in the
transportation of freight and passengers from or to, or from
and to, other states, into, out of or through, the state of Penn-
sylvania.

" The constitutionality of the Act of 1885 requiring the deduction of a state tax by corporate officers upon the payment of interest upon bonds owned by residents of the state is no longer open for discussion, having been so determined in Com. v. Del. Div. Canal Co., 123 Pa. 594; and it has been held to be constitutional even as to foreign corporations: Com. v. N. Y., L. E. & W. R. R. Co., 129 Pa. 463; and the corporations are liable for the tax upon bonds owned by either individuals or corporations in Pennsylvania and acting as trustees for persons whose residence is unknown: Com. v. Lehigh Valley R. R. Co., 129 Pa. 429.

" We have found as a fact that of the loans in respect of which tax is charged in the settlement appealed from $1,050,000 are owned in this state by corporations which are subject to and have paid a tax of three per cent on their net earnings for the year 1889, which net earnings were derived in part from the interest received on these bonds during said year.

" Counsel for defendant contends that, on these facts and the law applicable to them, the bonds owned by the corporations paying said net earnings tax are not taxable, because to tax the income derived from the bonds, and then to tax the bonds themselves, is to impose double taxation, which he contends is forbidden by the principle enunciated by Judge Cooley (Taxation, p. 165), as follows: ' It is a fundamental maxim in taxation that the same property shall not be subject to a double tax payable by the same party, either directly or indirectly; and where it is once decided that any kind or class of property is liable to be taxed under one provision of the statutes, it has been held to follow as a legal conclusion that the Legislature could not have intended the same property should be subject to another tax, though there may be general words in the law which would seem to imply that it may be taxed a second time.'

" We believe this maxim to be sound when it is understood and construed in connection with another generalization made by the same learned jurist (p. 164), as follows: ' There is a sense, however, in which duplicate taxation may be understood —and which we think is the proper sense—which would render it wholly inadmissible under any constitution requiring equality and uniformity in taxation. By duplicate taxation in this sense is understood the requirement that one person or any

one subject of taxation shall directly contribute twice to the same burden, while other subjects of taxation belonging to the same class are required to contribute but once.'

" The essence of the objection to taxation of the kind thus described is that some persons or things of the same class are taxed twice as much as others, which cannot be uniform taxation, and is manifestly unjust, and if that were the result of the imposition of the tax claimed in this case it could not be sustained.

" We think however that it has been expressly decided that the result of taxing the net earnings or income of these trust companies, and the bonds owned by them, would not be such duplicate or double taxation as is described and condemned by Judge Cooley.   The Act of June 1, 1889, § 27, is merely a re-enactment and continuation of § 10 of the Act of June 7, 1879, which re-enacted § 6 of the Act or May 1, 1868, all of which imposed the same tax upon the net earnings of the class of corporations specified.   But it was expressly decided in Phila. Contributionship for Insurance v. Com., 98 Pa. 48, that the tax imposed by these sections of these acts is a tax on the franchise of the corporation, and not on their property; and therefore in that case the court decided that such portion of the income of the corporation as was derived from interest received on United States bonds, which were not taxable, could not be deducted from the amount of income by which the tax was measured.   Justice Sterrett, delivering the opinion of the court, said: ' It may be conceded that the bonds, as such, are not taxable by the commonwealth; but the tax in question is not laid on the bonds.   It is a tax on the corporate franchise of the plaintiff in error, measured by its net earnings.   The right of the state to impose a tax on the franchise of any corporation that is indebted to it for existence and protection is too clear for argument.   If the right exists, as it undoubtedly does, the manner of its exercise must be left to the wisdom of the Legislature; and perhaps no standard or measure of taxation can be adopted that will operate more justly and equitably than a per centum on net earnings or income. . . . But, as already intimated, the tax is not laid on the money and other receipts of the company.   Its net earnings or income is resorted to simply as a just measure of the tax to be paid for the enjoyment of its corporate franchise.'

" The same doctrine precisely was declared in Society for Savings v. Coite, 6 Wall. 594, where a tax on ' a sum equal to three fourths of one per cent on the total amount of deposits ' in the savings bank defendant was held to be a tax not on the deposits but on the franchise of the corporation; and in Provident Institution v. Massachusetts, Ib. 611, where ' a tax on account of its depositors of one half of one per cent per annum on the amount of its deposits, to be assessed, one half of said annual tax, on the average amount of its deposits for the six months preceding the first day of May, and the other on the average amount of its deposits for the six months preceding the first day of November,' was also held to be a tax upon the franchise of the corporation and not upon its property ; and in both these cases the tax was held valid, although the deposits were invested in United States securities, which were not legally taxable.

" We think the principle of these cases is applicable here, and that, adopting it, we must hold that the imposition of the tax claimed under § 27 of the Act of 1889, on the net earnings of the trust companies which own these bonds, does not relieve them from the tax imposed upon the bonds by the first section of said Act.

" There can be no doubt that the Legislature intended not to exempt these bonds from taxation, for it is expressly declared in § 27 that the tax on net earnings or income shall be ' in addition to any tax on personal property to which it (the corporation) may be subject under the first section of the Act.'

" Under the finding of fact as to the date of payment of interest on the bonds taxed, with relation to the date of the passage of the act, and in view of the uniform custom of the accounting department to tax under existing laws only from and after the date of their passage, which custom has been recognized and adopted by the courts, we think defendant ought to be charged only one-half year's tax in respect of the $1,050,000 for the year 1889.  That this has always been done under analogous facts, and the reasons for so doing, may be seen by referring to the following cases : Com. v. Lehigh Val. R. R., 3 Luz. Leg. Obs. 147 ; Com. v. Wyoming Val. Canal Co., 50 Pa. 410 ; Drexel v. Com., 46 Pa. 31 ; Ebervale Coal Co. v. Com., 91 Pa. 47 ; Com. v. Standard Oil Co., 101 Pa. 119 ;

Com. v. Atlantic Refining Co., 2 C. C. R. 62; Com. v. Penn. Coal Co., 41 Leg. Int. 125 ; Com. v. Western Union Tel. Co., 15 W. N. 331; Pullman Pal. Car Co. v. Com., 107 Pa. 156 ; Com. v. American Machine Co., 2 Ches. Co. R. 186.

" We therefore arrive at the following
### CONCLUSIONS OF LAW :

" 1. Neither the Act of June 30, 1885, nor the act of June 1, 1889, is in conflict with § 1 of article IX of the constitution of Pennsylvania.

" 2. Neither the Act of June 30, 1885, nor the Act of June 1, 1889, is in conflict with § 1 of article XIV of amendments to the constitution of the United States.

"3. Neither the Act of June 30, 1885, nor the Act of June 1, 1889, is in violation of that provision of the Federal constitution which confers upon Congress the power to regulate commerce with foreign nations and among the several states and with the Indian tribes.

"4. Neither the Act of June 30, 1885, nor the Act of June 1, 1889, impairs the obligation of any contract nor is in conflict with § 10 of article I of the constitution of the United States.

" 5. The commonwealth is entitled to recover tax upon $548,500 of bonds owned by individuals residing in Pennsylvania.

" 6. The commonwealth is entitled to recover tax upon $21,000 of bonds held by individual residents of Pennsylvania in trust for persons whose residence is unknown.

" 7. The commonweath is entitled to recover tax upon $23,000 of bonds held by corporations of Pennsylvania as trustees for persons of unknown residence.

" 8. The $1,050,000 of bonds owned by trust companies which pay a tax on net earnings or income under section 27 of the Act of June 1, 1889, are not exempt from taxation imposed upon them by section 1 of said Act.

" 9. Tax is chargeable on said $1,050,000 of bonds only for one half of the year 1889, and the commonwealth is entitled to recover tax upon said bonds for said one half of that year.

" 10. All the specifications of objection in defendant's appeal except that relating to the apportionment of the tax on said last named bonds are over-ruled.

" 11. The commonwealth is entitled to judgment against de-

fendant in this case, as follows, if exceptions be not filed according to law:

"Tax, 3 mills upon $592,500 ($548,500, $21,000,

| | | |
|---|---|---|
| $23,000), for the whole of the year, | . . | $1,777.50 |
| Upon $1,050,000 for one half of the year, | . . | 1,575.00 |
| | | $3.352.50 |
| Less treasurer's commission, . . . . | . | 66.77 |
| | | $3,285.73 |
| Interest, 12 per cent, from Dec. 16, 1891, to | | |
| March 18, 1892, . . . . . . | . | 100.76 |
| Attorney general's commission, 5 per cent, . | . | 164.29 |

"$3,550.78"

Exceptions filed by defendant alleged that the court erred (1) in not finding that the Acts of 1885 and 1889 were void under art. IX, § 1, Pa. Const.; (2) art. V, amendments to U. S. Const.; (3) art. XIV, § 1, amendments to U. S. Const.; (4) art. I, § 10, U. S. Const., by impairing the charter contract with the state of New York; (5) by impairing the contract with the state of Pennsylvania; (6) by impairing the contract with its creditors; (7) under the implied prohibition of extra territorial taxation, under the U. S. Const.; (8) under the commerce clause of the U. S. Const., if said Acts apply to taxation of indebtedness of appellant; (9) under art. I, § 10, U. S. Const., by impairing contract between the corporation and the holder of the coupon, if they require the corporation to deduct from the amount due upon a coupon owned or presented by one person the tax due upon the bond from which said coupon had been detached; (10) in not sustaining the 15th specification of objection on appeal, quoting it; (11) in not holding that the taxation on bonds owned by trust companies was double taxation not warranted by any Act, or, if warranted, in conflict with art. IX, § 1, Pa. Const.; (12–15) in the conclusions of law 5–8 inclusive, quoting them; (16) in directing judgment for plaintiff as above; and (17) not for defendant.

The exceptions were overruled and judgment directed to be entered in accordance with the opinion. Defendant thereupon appealed.

*Errors assigned* were (1–15) dismissal of exceptions 1–15 inclusive, quoting them; (16) entry of judgment for plaintiff; and (17) not for defendant.

*M. E. Olmsted*, for appellant.—As the bonds were issued and sold to non-residents, this case is not ruled by Com. v. N. Y., L. E. & W. R. R., 129 Pa. 463, and is not within the terms and intendment of the Act of 1885. The Act is penal: Com. v. R. R., 129 Pa. 463; Com. v. Del. Div. Canal Co., 123 Pa. 594. Such Acts must be strictly construed: Potter's Dwarris, 245, 247, 251; Easton Bank v. Com., 10 Pa. 442; Com. v. Standard Oil Co., 101 Pa. 119, 150. The Legislature did not impose any condition that defendant should act as assessor and collector of state taxes, when it admitted the corporation to do business in the state. Such an act now would impair the obligation of contracts: Rorer, Inter-State Law, 289, 290; Com. v. Erie & Western Tr. Co., 107 Pa. 112. The fund which it is here sought to reach is not property in Pa. Hence the proceeding is in the nature of garnishment, to which a foreign corporation is not subject: Rorer, Inter-State Law, 128, 129; 8 A. & E. Ency. L. 302. Defendant's business, under the 8th finding, is inter-state commerce; and, if the obligation to collect this tax is a condition of its doing business here, it conflicts with the commerce clause of the U. S. Const.: N. & W. R. R. v. Pa., 136 U. S. 114. The tax on the mutual saving fund societies being a tax upon the interest, is double taxation, as the railroad deducts a tax upon the same interest: Cooley, Taxation, p. 165; Boston & Sandwich Glass Co. v. Boston, 4 Metc. 181; Osborn v. N. Y. & N. H. R. R., 40 Conn. 491; School Directors v. Carlisle Bank, 8 Watts, 289; Fox's Ap., 112 Pa. 354; Com. v. Adams Exp. Co., opinion by Mercur, J., May 31, 1880; Pa. Co. for Ins. on Lives v. Com., 22 W. N. 340. The authority of this last case has not been shaken, as might seem from the reference to it in 137 Pa. 411, when re-argument was ordered. The motion for re-argument did not involve the principle decided. See 2 Mona. 776.

*James A. Stranahan*, Deputy Attorney General, and *W. U. Hensel*, Attorney General, for appellee.—This case is ruled by Com. v. N. Y., L. E. & W. R. R., 129 Pa. 463, as to first point. The opinion of the court below is relied upon as to

the liability of the tax against the mutual saving fund societies.

PER CURIAM, July 13, 1992.

The judgment is affirmed upon the opinion of the learned judge of the court below.

[See, also, the next case.]

## Com. *v.* D. & H. Canal Co., Appellant.

*Tax laws—Foreign corporation—Collection of tax.*

It is competent for the Legislature of Pennsylvania to require that foreign corporations doing business in this state shall become responsible for the assessment and collection of the tax imposed by law upon bonds issued by them and owned by residents of Pennsylvania; and § 4 of the Act of June 30, 1885, authorizes a tax settlement in such case.

*Constitutional law—Act of June* 30, 1885.

The Act of June 30, 1885, does not violate any provision of the constitution of Pennsylvania or of the United States or its amendments.

Argued May 31, 1892. Appeal, No. 9, May T., 1892, by defendant, from judgment of C. P. Dauphin Co., Sept. T., 1891, No. 438, for plaintiff, on trial by court, without jury, of appeal from settlement of tax, under Act of June 30, 1885, on bonds owned by residents of Pennsylvania, issued by foreign corporation doing business in this state. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL, and HEYDRICK, JJ.

The specifications of objections on appeal from tax settlement involved substantially the same points as those involved in the exceptions to the findings of the court in the preceding case, except the first, which was as follows:

" The 4th section of the Act of June 30, 1885, does not impose any duties or liabilities upon corporations in respect of any tax upon bonds or mortgages issued by them, but applies only to persons who act in the capacity of treasurers of corporations; and there is no warrant nor authority of law for the settlement of the account hereby appealed from against the corporation appellant."